UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY CHU, ANDREA BULOW, THOMAS CALFORDA, LEBRONE KING, and TAMARA TURKISHER, individually and on behalf of all others similarly situated

Plaintiffs,

v.

WELLS FARGO INVESTMENTS, LLC, and DOES 1 through 50, inclusive

Defendants,

Nos.  C 05-4526 MHP
      C 06-7924 MHP

**MEMORANDUM & ORDER**

**Re: Motions for Final Approval of Class Settlement, Attorneys' Fees and Costs, and Enhancement Awards to Named Plaintiffs**

Plaintiffs Jerry Chu, Andrea Bulow, Thomas Calforda, Lebrone King and Tamara Turkisher filed these class actions alleging that defendant Wells Fargo Investments, LLC ("WFI") violated state and federal wage and hour laws. On September 7, 2010, the court preliminarily approved a Class Action Settlement Agreement. Now before the court is the parties' joint motion for final approval of the settlement agreement and plaintiffs' unopposed motion for an award of attorneys' fees, costs and enhancement awards for the named plaintiffs. Having considered the parties' arguments and submissions, and for the reasons discussed below, the court enters the following memorandum and order

BACKGROUND

On September 26, 2005, Plaintiff Chu filed an initial class action complaint against WFI in Alameda County Superior Court alleging a number of state and federal wage and hour violations. On November 4, 2005, WFI removed to this court. Docket No. 1. On December 28, 2006, Plaintiff Bulow filed a similar action in this court. On October 29, 2007, the *Chu* and *Barlow* actions were consolidated, and the firm of Hoffman & Lazear (H&L) were appointed lead counsel. Docket No. 65. The law firm of Scott Cole & Associates (SCA) continued to represent Plaintiff Bulow. Plaintiffs Calforda, King and Turkisher were added as plaintiffs in October 2009 by a second amended complaint. Docket No. 92. The operative Third Amended Complaint was filed on June 22, 2010 and alleges eight causes of action: (1) restitution under the Fair Labor Standards Act for failure to pay overtime; (2) failure to pay overtime under California law; (3) impermissible wage deductions under California law; (4) failure to provide meal and rest breaks under California law; (5) failure to provide accurate wage statements under California law; (6) failure to reimburse business expenses under California law; (7) claims under the California Private Attorneys General Act ("PAGA"); and (8) waiting time penalties under California law. Docket No. 103.

The parties engaged in three full-day mediation sessions with three separate mediators. At the third mediation on January 20, 2010, the parties accepted the mediator's proposal of settlement and signed a Memorandum of Understanding. This Memorandum was expanded in a Joint Stipulation of Settlement ("Settlement Agreement"), Docket No. 105, Exh. 1, which was preliminarily approved by this court on September 7, 2010, Docket No. 112.

The settlement recognizes two subclasses of individuals: (1) a federal opt-in collective group of financial service representatives and (2) a state law opt-out class. The Settlement Agreement creates a settlement fund of $6,900,000 to cover attorneys' fees and costs, class representative enhancements, settlement administration fees and expenses, payments to the California Labor and Workforce Development Agency ("LWDA"), and settlement awards to participating class members. The Settlement Agreement allocates $10,000 to settle PAGA claims, with 75% of that amount to be

paid to the LWDA, and 25% to be distributed as part of the settlement awards. The claims administrator's costs have amounted to $62, 210.32. Docket No. 120 (Roe Decl.) ¶ 20.

Plaintiffs have moved for $1,725,000 in attorneys fees by way of separate motions by lead counsel H&L and Bulow's counsel SCA. This amount constitutes 25% of the settlement fund, the maximum amount WFI agreed not to oppose in the Settlement Agreement. Settlement Agreement § 6.9.1. In order to permit the court to "cross-check" the reasonableness of this fee request, H&L and SCA have each provided lodestar figures. H&L has submitted itemized billing records indicating that it spent over 2000 hours in attorney time, yielding billable fees equal to $1,175,580.44. Docket No. 119 (Hoffman Decl.) ¶¶ 9-14. SCA has submitted a summary of billing records indicating a total of $352,232. Docket No. 123 (Bainer Decl.) Exh. B. The parties apparently have come to an agreement that SCA will receive $200,000 of the awarded fees if the full $1,725,000 is awarded, subject to pro rata reduction if the court awards a lower amount. *Id.* ¶ 19. H&L also requests $28,166.80 in costs, Hoffman Decl. ¶ 15 & Exh. B, and SCA requests $12,361.28 in costs, Bainer Decl. ¶ 21 & Exh. C. The Settlement permits a maximum of $60,000 for actual litigation expenses.

Plaintiffs have also moved for a $10,000 enhancement award for each of the named plaintiffs in recognition of their contribution to the class. *See* Settlement Agreement § 6.9.2. Plaintiffs' counsels point out that plaintiffs provided invaluable assistance in explaining their job duties, WFI compensation policies, reviewing documents and assisting in settlement negotiations. They also point out that plaintiffs undertook significant risk in stepping forward to represent the class and that their association with this litigation, easily discoverable through the Internet, could impact future employment in the financial services industry.

The remaining amount in the settlement fund will be used to pay class members who submitted valid and timely claims and consent-to-join forms. Each participant will receive a share based on his or her total number of months worked during the class period in relation to the total number of months worked by all members of the class during the class period. Any unclaimed amounts will be divided proportionally among class members who submitted timely claims. Settlement Agreement § 6.2.1. The Settlement Agreement allocates a greater proportion of

3

settlement funds to time worked in California than to time worked in other jurisdictions, given that the California claims likely would have consumed disproportionate resources. Months spent in California are therefore paid at a rate approximately double the rate for months worked in other states. Settlement Agreement § 6.2.2.

After receiving preliminary approval, the parties effectuated the notice process approved by the court. Notice was sent to 2,752 class members. The claims administrator received claim forms from 1,343 class members, 1,320 of which were deemed valid. Only 16 class members requested exclusion from the settlement. No individual or entity has filed an objection. *See* Roe Decl. ¶¶ 9-19.

LEGAL STANDARD

I.    Final Settlement Approval

In deciding whether to approve of a settlement, the court must determine if the settlement terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court's inquiry into a consensual agreement negotiated by the parties should seek only to ensure that the settlement is fair, reasonable and adequate and not the result of fraud, over-reaching or collusion. *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

II.    Attorneys' Fees

Federal Rule of Civil Procedure 23(h) allows the court to award reasonable attorneys' fees and costs according to the agreement of the parties. Fed. R. Civ. P. 23(h). "[W]hether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment . . . are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999). In common fund cases, the district court has the discretion to use either a percentage-of-the-recovery method or lodestar method to calculate reasonable attorneys' fees. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994). When attorneys' fees are to be paid from a common settlement fund, "the relationship between plaintiffs and their attorneys turns adversarial" and "the district court must

4

assume the role of fiduciary for the class plaintiffs." *Id*. at 1302.  It thus becomes crucial for the court to scrutinize the attorneys' request in light of their role in the litigation.

Under the percentage-of-the-recovery method, the attorneys' fees are calculated as a percentage of the common fund, with 25% established as the benchmark in the Ninth Circuit. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under the lodestar method, the lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *Id.* at 1029 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  Even when the percentage method is used, the lodestar method should be used as a cross-check to determine the fairness of the award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

DISCUSSION

I.   Final Settlement Approval.

The parties have adequately demonstrated that the Settlement Agreement is fair and reasonable.  The Ninth Circuit has identified several factors in order to evaluate a class action settlement: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir.2009); *accord Staton*, 327 F.3d at 959. The list is not exhaustive, and the importance of the specific factors varies from case to case. *See Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

These factors weigh in favor of approving the settlement.  Firstly, the outcome of plaintiffs' case was far from certain, particularly in light of several recent decertification orders and denials of certification in similar wage and hour class actions. *See, e.g.*, *In re Wells Fargo Home Mtg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009);  *Drake v. Morgan Stanley & Co., Inc.*, No. CV

5

1  09-6467, 2010 WL 2175819 (C.D. Cal. Apr. 30, 2010). Wells Fargo has demonstrated that it is
2  willing to vigorously defend against these actions both at the certification stage and in its exemption
3  arguments. Secondly, the size of the settlement awards to class members is substantial. Thirdly, by
4  settling the litigation at this juncture, the class avoids having to wait potentially several years before
5  receiving any compensation from WFI, notwithstanding the substantial risk that they would not
6  ultimately prevail. Although four years and a substantial amount of discovery has already taken
7  place, the respective factual and legal strengths of the parties' arguments are likely to have been
8  sufficiently fleshed out upon agreeing to the terms of the settlement. *See In re Warner Commc'ns*
9  *Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986). Fourthly, class
10 counsel has demonstrated that it is experienced and well-suited to represent the interests of the class.
11 Lastly, it is strong testament to the fairness of the settlement that not a single objector has come
12 forward and that only 16 out of 2,752 noticed class members opted out. *See Mandujano v. Basic*
13 *Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (indicating that the number of objectors is
14 "a factor be considered when approving a settlement").

15 II.   Attorneys' Fees

16     Courts in this Circuit usually apply the percentage method to determine attorneys' fees but
17 then use the lodestar method to cross-check the reasonableness of the percentage to be awarded.
18 *See, e.g.*, *Vizcaino*, 290 F.3d at 1050. "[T]he 'bench mark' percentage for the fee award should be
19 25 percent." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (citation
20 omitted). This percentage may be adjusted up or down as warranted by the circumstances of the
21 case. *Id.* "Selection of the benchmark or any other rate must be supported by findings that take into
22 account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has set
23 forth a non-exhaustive list of factors which may be relevant to the district court's determination of
24 the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill
25 required and quality of work; (4) the contingent nature of the fee and the financial burden carried by
26 the plaintiffs; and (5) awards made in similar cases. *Id.* at 1048-50.

27
28

6

The percentage-of-the-fund method seems appropriate in this case, particularly given that the total amount of the settlement is a fixed amount of $6,900,000 without any reversionary payment to WFI. *Compare with Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956, at *3 (N.D. Cal. Apr. 30, 2010) (Patel, J.) (declining percentage-of-the-fund method where class members could elect $35 voucher or a replacement motherboard, making it difficult to value the settlement as a whole). As to the exact percentage, plaintiffs request the "benchmark" award of 25% of the total $6,900,000 fund, with the understanding that $200,000 will be allocated to SCA and $1,525,000 to H&L. The favorable settlement and satisfactory performance by counsel seem to indicate that the benchmark award is reasonable in this case. For many of the reasons stated above, the outcome of this litigation was far from certain, and counsel was able to nonetheless obtain a fairly large award for over one thousand class members. Moreover, both H&L and SCA took this litigation on a pure contingency basis, risking loss or nonpayment by pursuing plaintiffs' claims for approximately five years. *See* Bainer Decl. ¶ 17-18. Lastly, plaintiffs have cited to numerous attorneys' fee awards equal to or exceeding the 25% benchmark, including in the context of wage and hour class actions against financial service companies. *See* Docket No. 118 at 11; Docket No. 122 at 11-12.

Moreover, a cross-check of the requested fee award with the lodestar figures provided by counsel indicate that the 25% benchmark is reasonable here. H&L's detailed, itemized statements yield a total of $1,175,580.44 in billable fees. The 25% benchmark of $1,725,000 would thus represent a 1.467 multiplier of the claimed lodestar. This amount is within the reasonable range of approved multipliers. *See Vizcaino*, 290 F.3d at 1051 (citing *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.")). Moreover, $200,000 of the fee award apparently will be shared with SCA, reducing the effective multiplier as to H&L.

Accordingly, the court grants plaintiffs' motions for attorneys fees in the amount of $1,725,000 plus $40,528.08 in costs (representing $28,166.80 in costs to H&L and $12,361.28 in costs to SCA).

III.     Enhancement Awards to Named Plaintiffs

A court has the discretion to award enhancement awards, or incentive fees, to named class representatives in a class action suit. *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (Williams, J). Plaintiffs request an award of $10,000 to each named plaintiff, the maximum amount authorized under the Settlement Agreement. Plaintiffs have adequately demonstrated that named plaintiffs have assisted in the preparation and settlement of this litigation notwithstanding some risk of professional harm due to their public participation. Moreover, the amount requested appears in line with other incentive awards in this Circuit, although perhaps somewhat on the high end of the acceptable range for the size of the class and the amount of the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (Laporte, M.J.) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount); *Glass v. UBS Fin. Servs.*, No. , 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) (approving $25,000 award to each of four plaintiff representatives of 13,176 member class from $45 million settlement amount); *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 award in $76,723,213.26 settlement amount). Although $10,000 seems reasonable for plaintiffs Chu and Bulow, who have been participating in this litigation since 2005 and 2006 respectively, plaintiffs Calforda, King and Turkisher were not added as named plaintiffs until the filing of the Second Amended Complaint in October 2009. It would appear to be a windfall to these individuals, and unfair to the class, for them to receive the same amount in incentive awards. Plaintiffs have set forth no argument as to why these later-added plaintiffs should be treated as if they were similarly situated to Chu and Bulow. The court therefore awards $4,000 each to plaintiffs Calforda, King and Turkisher and $10,000 each to plaintiffs Chu and Bulow in recognition of their service to the class.

8

## CONCLUSION

For the foregoing reasons, the joint motion for final settlement approval is granted. Plaintiffs' motion for attorneys' fees is granted in the amount of $1,725,000 plus $40,528.08 in costs, to be divided as agreed among counsel. Plaintiffs' motion for enhancement awards is granted in the amount of $10,000 each to Chu and Bulow and $4,000 each to Calforda, King and Turkisher.

    IT IS SO ORDERED.

Dated: February 15, 2011

MARILYN HALL PATEL
United States District Court Judge
Northern District of California